UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 FEB 18 P 1: 17
U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| CHRISTOPHER R. BOUSQUET ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> EDWARD FICCO, ) <br> ) <br> Respondent. ) | Civil Action No. 04-10601-WGY |

### MEMORANDUM OF THE RESPONDENT
### IN SUPPORT OF MOTION TO DISMISS

The respondent submits this Memorandum in support of his motion to dismiss the petition for writ of habeas corpus filed by Christopher R. Bousquet ("the petitioner") who was convicted in 1988 of first degree murder.[1] The pro se petitioner bases his claim for relief on four grounds:

(1) conviction obtained through coerced confession-:"I was manipulated into making confession, did not realize self-incrimination" (Petition, p. 5, ¶ 12A)

(2) conviction obtained through coerced confession- "I thought I would do time for my guilt. They made an oral deal before the taping and though I waived my rights I was not aware and did not realize law, etc" (Petition, p. 5, ¶ 12B)

(3) ineffective assistance of counsel - "Though denied all state appeals on this said grounds I feel I was let down by trial lawyer - even SJC said he did not raise criminal responsibility - in their orders. I feel I was pushed through and got a first degree - I feel it's too much." (Petition, p. 5, ¶ 12C)

---

[1] The respondent is appending the following exhibits from the petitioner's state and federal post-conviction actions: Exhibit A: *Commonwealth v. Bousquet*, 407 Mass. 854, 556 N.E. 2d 37 (1990); Exhibit B: Docket Entries from Bristol Superior Court in *Commonwealth v. Bousquet*, Ind. No. 19043; Exhibit C: Docket Entries from the Supreme Judicial Court for Suffolk County in *Commonwealth v. Bousquet*, 1999-P-1052; and Exhibit D: Docket Entries from *Bousquet v. Ficco*, USDC C.A. No. 04-10601-WGY.

2

(4) mental capacity-criminal responsibility - "I was not an adult when crime happened - I did not know and realized my action were so great - psychological report in my case which was argued should have been used and was not." (Petition, p. 5, ¶ 12B)

The respondent has moved to dismiss the petition on the ground that the petition is time-barred. The petitioner's 1988 conviction for first degree murder was affirmed by the Supreme Judicial Court in 1990. *Commonwealth v. Bousquet*, 407 Mass. 854, 556 N.E. 2d 37 (1990)(Exh. A.) His motion for a new trial filed in 1995 was ultimately denied in 1997 and his petition for leave to appeal the denial was denied by the Single Justice pursuant to G. L. 278, § 33E on August 13, 2001.[2] (Exh. B, Docket Entries #33-#46; Exh. C, Paper #17). The instant petition for writ of habeas corpus was filed in federal court on March 24, 2004. (Exh. D, Docket Entry #1). Although the petitioner claims that his appellate counsel did not inform him of the Single Justice's decision for two years, this alleged failure does not constitute extraordinary circumstances which would warrant equitable tolling of the period of limitation. Moreover, the petitioner did not exercise due diligence in keeping abreast of his case since he made no apparent effort to determine the status of the case for two years and waited nine months after receiving a copy of the decision before filing his federal habeas petition. Because of this inexcusable delay, the one year period of limitation of 28 U.S.C. § 2244(d)(1)(A) had long expired. The petition is clearly untimely

---

[2] The statute, G.L. c. 278, § 33E, reads, in pertinent part, as follows:
If any motion is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court.

3

and the petitioner is not entitled to equitable tolling of the statutory period. The petition should be dismissed.

### PRIOR PROCEEDINGS

On February 10, 1988, the petitioner was convicted of murder in the first degree with deliberately premeditated malice aforethought and with extreme atrocity or cruelty. (Exh. B, Docket Entry #17). He was sentenced to imprisonment for life without the possibility of parole. *Id.* The Supreme Judicial Court affirmed the judgment of conviction on July 5, 1990. *Commonwealth v. Bousquet*, 407 Mass. 854, 556 N.E. 2d 37 (1990)(Exh. A).

On February 27, 1995, the petitioner filed a Motion for a New Trial pursuant to Mass. R. Crim. P. 30 and sought the appointment of counsel to represent him. (Exh. B, Docket Entries #33 and #34). On May 13, 1997, the court, Chin, J., denied the motion to appoint counsel after the Committee for Public Counsel Services (CPCS) declined the opportunity to represent the petitioner. (Exh. B, Docket Entry #37). On October 17, 1997, the petitioner filed a Renewed Motion for a New Trial. (Exh. B, Docket Entry #45) On November 24, 1997, the court, O'Neill, J., denied the Renewed Motion for New Trial. (Exh. B, Docket Entry #46)

The petitioner's petition for leave to appeal the denial of his Renewed Motion for New Trial pursuant to G. L. c. 278, § 33E was entered on the docket of the Supreme Judicial Court for Suffolk County on January 26, 1999. (Exh. C, Paper #1). Now acting pro se, the petitioner filed various documents and a Brief for the Defendant-Appellant on January 13, 2000. (Exh. C, Paper #6, #7). On February 24, 2000, the Commonwealth filed a Memorandum in Opposition to the Defendant's Petition pursuant to G. L. c.278,

4

§ 33 E. (Exh. C, Paper #8). On October 13, 2000, Atty. James A. Couture, counsel for the petitioner moved to stay proceedings to November 1, 1999, which was allowed. (Exh. C, Paper #9). The stay was extended thereafter to January 15, 2001. (Exh. C, Paper #11).

On March 21, 2000, a hearing was held before the Single Justice, Cordy, J., with Atty. James R. Couture representing Christopher R. Bousquet and Assistant District Attorney Catherine B.S. Ledwidge representing the Commonwealth. (Exh. C, Paper #15 and 16). On August 9, 2001, the Single Justice denied the petition for leave to file an appeal of the denial of a motion for new trial. (Exh. C, Paper #17). On that same day notice was sent to counsel regarding the Single Justice's decision. (Exh. C, Paper #18). The Bristol Superior Court Clerk received notice of the Single Justice's decision on August 13, 2001. (Exh. B, Docket Entry #53).

Two years later, on July 7, 2003, the Clerk of the Supreme Judicial Court for Suffolk County received a letter from the petitioner saying that he was informed by his court appointed counsel that his appeal had been denied but had never received a copy from him or the court. (Exh. C, Paper #19). On July 9, 2003, the Clerk sent the petitioner a copy of the Memorandum and Order and an updated docket sheet. (Exh. C, p. 2). The instant petition for writ of habeas corpus was filed on March 25, 2004.[3] (Exh. D).

---

[3] The Civil Docket for this case indicates that, on April 9, 2004, this Court dismissed the petition *sua sponte* as untimely without prejudice to its reconsideration Apparently, following correspondence from the petitioner, the court vacated the dismissal on December 15, 2004, and ordered the respondent to file a responsive pleading. The court indicated that the petition would be dismissed again as untimely "should it appear that Bousquet's counsel had informed him of the action of the single justice of the Massachusetts Supreme Judicial Court more than one year prior to the filing of this petition..." (Exh. D at 1-2).

5

## STATEMENT OF FACTS

The Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981) (holding that presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or an appellate court"). The Supreme Judicial Court described the underlying facts of the crimes for which the petitioner was convicted as follows:

> On June 14, 1982, both the [petitioner] and the victim were sixteen years old. The victim had sold some hashish to the [petitioner] and the two of them went into the woods in Swansea to smoke the hashish together. At some point, the victim took out a knife and demanded that the [petitioner] turn over his money. The [petitioner] pulled out his own knife, which had "brass knuckles" attached to it. He punched the victim and, in so doing, cut his own thumb. He then stabbed the victim in the face. The victim tried to flee, but the [petitioner] pursued her. He continued stabbing the victim all over her body, until the knife blade curled over. The [petitioner] then kicked the victim several times and threw his knife into the woods. Before he left, the [petitioner] took the victim's "compact," in which she had placed the money the [petitioner] had given her for the hashish.
>
> Over two years later, the victim's skeletal remains were discovered, along with some clothing and personal items. The victim's parents identified the items as those of their daughter. The skeletal remains were identified as those of the victim.
>
> Joseph Amaral, when he heard about the discovery of the victim's remains, telephoned the police to report that he had found a knife in the same area. Amaral turned the knife over to the police and explained that he had had to straighten out the blade, which was bent like a fish hook when he found it.

6

> In November of 1986, Karl Tyas contacted the police. Tyas was one of several people to whom the [petitioner] had boasted about how he had killed a girl. Detective Robert Furtado of the Swansea police department and Sergeant Natale Lapriore of the State Police then went to the [petitioner]'s place of employment and asked the [petitioner] if they could speak with him. The [petitioner] agreed and accompanied the police to the Bristol district attorney's office. The officers advised the [petitioner] of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). They then told the [petitioner] that there was evidence linking him to the victim's murder. The [petitioner] denied that he was involved. Sergeant Lapriore then said, "Chris, she must have really pissed you off to do that to her." The [petitioner] said, "Yes, she did," and then gave the officers a full account of the murder, as outlined above.
>
> Lapriore and Furtado placed the [petitioner] under arrest. They asked him if he would repeat his confession on videotape, and the [petitioner] agreed. The officers again gave the [petitioner] Miranda warnings and then videotaped his entire confession.
>
> The following day, they obtained a search warrant for the [petitioner]'s house. In the [petitioner]'s bedroom, Lapriore discovered a compact. The victim's stepsister and one of the victim's friends both identified the compact as one that had belonged to the victim.

*Commonwealth v. Bousquet*, 407 Mass. 854, 855-856, 556 N.E. 2d 37, 38-39 (1990)

## ARGUMENT

### I. THE PETITION IS TIME-BARRED AND SHOULD BE DISMISSED

Since the subject petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Section 2244(d)(1)(A) of the AEDPA establishes a one-year statute of limitations for applications for the writ, running from the latest of the following dates:

(A)   the date on which judgment became final by the conclusion of direct appellate review or the expiration of the time for seeking such review;

7

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the petition at bar, under the statute, the date triggering the one year period of limitation is October 3, 1990. The Massachusetts Supreme Judicial Court affirmed his conviction on July 5, 1990, and, adding ninety days for an appeal to the United States Supreme Court, the triggering date is October 3, 1990. *See Nowaczyk v. Warden, New Hampshire State Prison*, 299 F.3d 69, 70 (1st Cir. 2002); *Donovan v. Maine*, 276 F.3d 87, 91 (1st Cir. 2002) ("section 2244(d)(1) provides for tolling during the ninety-day period in which the petitioner would have been allowed to ask the United States Supreme Court to grant certiorari to review the [state court's] denial of his direct appeal).

Under AEDPA, a habeas petitioner has one-year in which to file his federal habeas petition commencing when the conviction becomes final. However the relevant date, October 3, 1990, precedes the adoption of AEDPA. Where, as here, a petitioner's conviction became final prior to the effective date of AEDPA (April 24, 1996) federal courts have allowed petitioners a one-year grace period within which to file their petitions. *Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir. 1999). Thus the petitioner had until April 24, 1997 to file his petition. The petition here was filed on March 25, 2004, long after this grace period expired. (Exh. D).

8

However, the running of the one-year grace period may be tolled by the filing of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim. . . ." 28 U.S.C. § 2244(d)(2). *See also Gaskins*, 183 F.3d at 9-10 (holding that the § 2244(d)(2)'s tolling provision applies to the judicially-created grace period). The petitioner's motion for new trial was pending in the state courts from February 27, 1995 until August 9, 2001. (See Exh. B, Docket Entries #34- # 53 and Exh. C Paper #17). Since the instant federal petition was filed on March 25, 2004, more thirty-one months after the Single Justice denied the motion for leave to appeal the denial of his motion for a new trial on August 9, 2001, the petition is untimely.

Although time-barred, a habeas petition may survive under the principle of equitable tolling in rare and exceptional cases, where extraordinary circumstances prevented the petitioner from timely filing his petition and he exercised reasonable due diligence. Last year, the First Circuit joined the other circuits in holding that the one-year limitation period in § 2244(d)(1) is not jurisdictional and, accordingly, can be subject to equitable tolling in appropriate cases. *See Neverson v. Farquharson*, 366 F.3d 43, 41(1st Cir. 2004) and cases cited therein. The petitioner does not merit this extraordinary relief since he fulfills none of the essential requirements for triggering an exemption from the one-year period of limitation.

"[E]quitable tolling ... is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances." *Delaney v. Matesanz*, 264 F. 3d 7, 14 (1st Cir. 2001). Recognizing the strong policies of finality underlying the revisions of Federal habeas corpus law in the AEDPA, the courts that have applied equitable tolling in this setting have done so only in such "extraordinary" and unavoidable circumstances. *See Kreutzer v.*

9

*Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) (only extraordinary circumstances beyond prisoner's control that make timely filing impossible suffice for equitable tolling), *cert. denied*, 534 U.S. 863 (2001); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (only wrongful conduct by government or extraordinary circumstances making timely filing impossible comprise grounds for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("extraordinary circumstances that are both beyond [petitioner's] control and unavoidable even with diligence"). Ignorance of the law is not a ground for equitable tolling, *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.), *cert. denied*, 525 U.S. 891 (1998), nor is mere excusable neglect, *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 619 (3rd Cir. 1998). In non-capital cases attorney error does not rise to the level of an extraordinary circumstance. *Fahy v. Horn*, 240 F. 32d 239, 244 (2d Cir. 2001).

Decisions of the Supreme Court and the First Circuit have emphasized that equitable tolling should be seldomly granted and only in unusual circumstances. *See, e.g., Irwin v. Veterans Admin. Regional Office*, 498 U.S. 89, 96 (1990) (equitable tolling allowed "only sparingly"); *Delaney v. Matesanz*, 264 F.3d at 15 (no equitable tolling unless "proponent shows that he was actively misled or prevented 'in some extraordinary way from asserting his rights'"( quoting *United States v. Patterson*, 211 F.3d 927, 930-31 (5th Cir. 2000)); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 279 (1st Cir. 1999) (no equitable tolling in general unless circumstances beyond plaintiff's control prevented filing); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53 (1st Cir. 1999)(active attempt to mislead employee)., *cert. denied*, 528 U.S. 1161 (2000). As the Fourth Circuit noted in permitting equitable tolling of habeas matters only in extraordinary circumstances:

10

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.

*Harris v. Hutchinson*, 209 F.3d at 330. In *Neverson*, the First Circuit warned that "[i]n the habeas context particularly, care is required to avoid upsetting the "strong concern for finality" embodied in § 2254." *Neverson*, 366 F.3d at 42, *citing Brackett v. United States*, 270 F.3d 60, 67 (1st Cir.2001). "In short, equitable tolling is strong medicine, not profligately to be dispensed." *Delaney v. Matesanz*, 264 F. 3d at 15.

The petitioner has not established the requirements necessary for the application of equitable tolling, namely, that (1) extraordinary circumstances prevented him from timely filing his petition and (2) he exercised reasonable due diligence. *Proulx v. Marshall*, 190 F.Supp.2d 117, 120 (D.Mass.. 2001). *See Smith v. McGinnis*, 208 F. 3d , 17 (2d. Cir.), *cert denied*, 121 S. Ct. 104 (2000)("the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll"). There were no extraordinary circumstances or any impediments which prevented the petitioner from seeking redress in the federal court in a timely manner.

The petitioner asserted in correspondence to this court that his lawyer did not inform him when the Single Justice had denied his gatekeeper motion under G. L. c. 278, § 33E. He claims that his lawyer told him that he (the lawyer) had argued the motion; that he was awaiting the decision; that he did not know he was denied; and the court never sent him a copy. (See April 13, 2004 correspondence at p. 2. ) In contrast to this assertion, the Single Justice docket sheet quotes the petitioner as stating that he was informed by his court appointed attorney that his appeal had been denied but that he did not receive a copy of the

11

decision from his lawyer. (Exh. C. at p. 2)( emphasis supplied. ) The petitioner's latest claim that he was not informed of the Single Justice's decision at the time that it was issued lacks credibility. Moreover, even if believed, the petitioner did not exercise reasonable diligence since he waited almost two years while he knew his case was pending before writing to the Clerk for the Single Justice to obtain a copy of the decision and docket sheet. (Exh. B at p. 2). *See Lacava v. Kyler*, 2005 WL 326832, *1 (3rd Cir.(Pa.))(the twenty-one month period of passivity precludes a finding of due diligence for purposes of equitable tolling).

The petitioner did not exercise due diligence since he neglected to keep track of his case, one in which he had filed his own brief. (Exh. C, Paper #7). *See Pryor v. U.S. Postal Service*, 769 F.2d 281, 287 (5th Cir. 1985)(a party has a duty of diligence to inquire about the status of his case); *Plowden v. Romine*, 78 F. Supp. 2d 115, 119 (E.D. N.Y. 1999)(petitioner could not demonstrate reasonable diligence where he allowed seventeen months to elapse before inquiring into the status of his post-conviction motion). In addition, the petitioner asked for and received a copy of the decision and updated docket sheet from the Clerk's Office on July 9, 2003. (Exh. C at p. 2) However, he still waited almost nine months, until March 25, 2004, to file his federal habeas corpus petition. As the Supreme Court has held: "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151(1984). In sum, the petition should be dismissed since it is time-barred and equitable tolling of the period of limitation is clearly not warranted.

12

## CONCLUSION

For the above-stated reasons, the petition should be dismissed.

          Respectfully submitted,

          THOMAS F. REILLY
          ATTORNEY GENERAL

          *Annette C. Benedetto*
          Annette C. Benedetto
          Assistant Attorney General
          Criminal Bureau
          One Ashburton Place
          Boston, Massachusetts 02108
          (617) 727-2200
          BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached motion and supporting memorandum was served upon the following petitioner pro se by first class mail, postage pre-paid, on February 17, 2005.

Christopher R. Bousquet, pro se
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, MA 01464

          *Annette C. Benedetto*
          Annette C. Benedetto