556 N.E.2d 37, 407 Mass. 854, Com. v. Bousquet, (Mass. 1990)

Page 1

*37 556 N.E.2d 37

407 Mass. 854

Supreme Judicial Court of Massachusetts, Bristol.

**COMMONWEALTH**
v.
**Christopher R. BOUSQUET.**
Argued May 9, 1990.
Decided July 5, 1990.

Defendant was convicted of first-degree murder by the Superior Court, Bristol County, George Jacobs, J., following transfer of defendant from juvenile system on order of Kenneth P. Nasif, J., and defendant appealed. The Supreme Judicial Court, Nolan, J., held that: (1) decision to transfer defendant for trial as adult was not abuse of discretion; (2) mere fact that defendant may have ingested drugs prior to interrogation was not sufficient to demonstrate that confession given after *Miranda* advisement was involuntary; and (3) denial of defendant's request to make unsworn statement to jury was not abuse of discretion, though defendant did not testify as witness for defense.

Affirmed.

West Headnotes

[1] Infants ⬤➡68.7(1)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
211k68.7(1) In General.
Waiver proceeding brought pursuant to special statute dealing with persons who are apprehended for juvenile offenses only after their 18th birthday was governed by specific standards provided in statute, and not by general standards applicable to transfer of juveniles in general. M.G.L.A. c. 119, §§ 61, 72A.

[2] Infants ⬤➡68.7(2)
 211 ----
  211VI Crimes
   211k68 Rights and Privileges as to Prosecutions
    211k68.7 Waiver of Juvenile Court Jurisdiction; Transfer to Adult Court
211k68.7(2) Grounds, Objections, and Matters Considered; Discretion.
Decision to transfer defendant who committed homicide while a juvenile, but who was apprehended only after his 18th birthday, was not abuse of discretion; judge could properly conclude that discharge of defendant and dismissal of complaint would not be consistent with protection of public. M.G.L.A. c. 119, § 72A.

[3] Criminal Law ⬤➡412.2(5)
 110 ----
  110XVII Evidence
   110XVII(M) Declarations
    110k411 Declarations by Accused
     110k412.2 Right to Counsel; Caution
      110k412.2(5) Failure to Request Counsel; Waiver.
Mere fact that defendant may have ingested drugs on day of interrogation was not sufficient to demonstrate that waiver of *Miranda* rights was other than knowing and intelligent, given evidence that defendant spoke coherently and appeared sober to police, signed waiver form, and was able to give detailed account of murder. U.S.C.A. Const.Amends. 5, 6.

[4] Criminal Law ⬤➡412.2(5)
 110 ----
  110XVII Evidence
   110XVII(M) Declarations
    110k411 Declarations by Accused
     110k412.2 Right to Counsel; Caution
      110k412.2(5) Failure to Request Counsel; Waiver.
Defendant's waiver of right to counsel was not invalid, merely because police chose to arrest him at night for crime committed several months earlier and thereby delayed his arraignment until next day. U.S.C.A. Const.Amends. 5, 6.

[5] Criminal Law ⬤➡517.2(2)
 110 ----
  110XVII Evidence
   110XVII(T) Confessions
    110k517.2 Absence or Denial of Counsel; Inadequate Representation
     110k517.2(2) Failure to Request Counsel; Waiver.
Mere fact that defendant may have ingested drugs on day of interrogation was not sufficient to render confession given after *Miranda* advisement

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

involuntary, where officers testified that defendant appeared sober, was responsive to questions asked, and was cooperative during entire confession.

[6] Criminal Law ⚷ 641.13(6)
 110 ----
  110XX Trial
   110XX(B) Course and Conduct of Trial in General
    110k641 Counsel for Accused
     110k641.13 Adequacy of Representation
      110k641.13(2) Particular Cases and Problems
       110k641.13(6) Evidence; Procurement, Presentation and Objections.

Defendant charged with murder for his attack on woman who allegedly sold him hashish and then attempted to rob him was not deprived of "effective assistance of counsel" by attorney's failure to call expert to support voluntary intoxication defense by testifying to effects of hashish on mind, where only evidence that defendant had used hashish prior to murder was his own testimony, and defendant's intoxication defense tended to undermine claims of self-defense. U.S.C.A. Const.Amend. 6.

[7] Homicide ⚷ 1043
 203 ----
  203IX Evidence
   203IX(D) Admissibility in General
    203k1039 Capacity to Commit Crime
    203k1043 Intoxication.

(Formerly 203k180)
Evidence of voluntary intoxication is admissible, in murder prosecution, to show that defendant is incapable of premeditating, as well as to refute claim that murder was committed with extreme atrocity or cruelty or with malice.

[8] Criminal Law ⚷ 668
 110 ----
  110XX Trial
   110XX(C) Reception of Evidence
   110k668 Statement by Accused.

Decision to allow defendant in capital case to make unsworn statement to jury is matter within discretion of trial judge.

[9] Criminal Law ⚷ 668
 110 ----
  110XX Trial
   110XX(C) Reception of Evidence
   110k668 Statement by Accused.

Capital case in which defendant chooses not to testify may be appropriate one for allowing defendant to make unsworn statement to jury; however, absent showing of prejudice, denial of defendant's request to make unsworn statement will not be held abuse of discretion.

[10] Criminal Law ⚷ 822(17)
 110 ----
  110XX Trial
   110XX(G) Instructions: Necessity, Requisites, and Sufficiency
    110k822 Construction and Effect of Charge as a Whole
    110k822(17) Grade or Degree of Offense.

Instruction that use of excessive or unreasonable force in exercise of so-called right of self-defense reduces murder to manslaughter was not inadequate or misleading, when considered in its entirety, though coupled with instruction that passage of threat which initially warranted use of defensive force may warrant finding of deliberate premeditation.

[11] Homicide ⚷ 1043
 203 ----
  203IX Evidence
   203IX(D) Admissibility in General
    203k1039 Capacity to Commit Crime
    203k1043 Intoxication.

(Formerly 203k180)
Evidence of defendant's voluntary intoxication at time of alleged murder is factor which jury "may" consider in deciding whether Commonwealth has proved beyond reasonable doubt that defendant was capable of conceiving and deliberately premeditating intention to kill.

*38   [407 Mass. 855] Eileen D. Agnes, Framingham, for defendant.

Beth R. Levenson, Asst. Dist. Atty., for Com.

Before [407 Mass. 854] LIACOS, C.J., and ABRAMS, NOLAN, O'CONNOR and GREANEY, JJ.

[407 Mass. 855] NOLAN, Justice.

A jury convicted the defendant, Christopher R. Bousquet, of murder in the first degree. The verdict was based on the conclusion that the defendant had killed the victim with "deliberately premeditated malice aforethought" and with "extreme atrocity or cruelty." The defendant appeals from his conviction.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

*39 On June 14, 1982, both the defendant and the victim were sixteen years old. The victim had sold some hashish to the defendant and the two of them went into the woods in Swansea to smoke the hashish together. At some point, the victim took out a knife and demanded that the defendant turn over his money. The defendant pulled out his own knife, which had "brass knuckles" attached to it. He punched the victim and, in so doing, cut his own thumb. He then stabbed the victim in the face. The victim tried to flee, but the defendant pursued her. He continued stabbing the victim all over her body, until the knife blade curled over. The defendant then kicked the victim several times and threw his knife into the woods. Before he left, the defendant took the victim's "compact," in which she had placed the money the defendant had given her for the hashish.

[407 Mass. 856] Over two years later, the victim's skeletal remains were discovered, along with some clothing and personal items. The victim's parents identified the items as those of their daughter. The skeletal remains were identified as those of the victim.

Joseph Amaral, when he heard about the discovery of the victim's remains, telephoned the police to report that he had found a knife in the same area. Amaral turned the knife over to the police and explained that he had had to straighten out the blade, which was bent like a fish hook when he found it.

In November of 1986, Karl Tyas contacted the police. Tyas was one of several people to whom the defendant had boasted about how he had killed a girl. Detective Robert Furtado of the Swansea police department and Sergeant Natale Lapriore of the State police then went to the defendant's place of employment and asked the defendant if they could speak with him. The defendant agreed and accompanied the police to the Bristol district attorney's office. The officers advised the defendant of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). They then told the defendant that there was evidence linking him to the victim's murder. The defendant denied that he was involved. Sergeant Lapriore then said, "Chris, she must have really pissed you off to do that to her." The defendant said, "Yes, she did," and then gave the officers a full account of the murder, as outlined above.

Lapriore and Furtado placed the defendant under arrest. They asked him if he would repeat his confession on videotape, and the defendant agreed. The officers again gave the defendant Miranda warnings and then videotaped his entire confession.

The following day, they obtained a search warrant for the defendant's house. In the defendant's bedroom, Lapriore discovered a compact. The victim's stepsister and one of the victim's friends both identified the compact as one that had belonged to the victim.

Other facts appear in the discussion of the issues raised by the defendant.

[407 Mass. 857] 1. *Transfer from Juvenile Court to Superior Court.* Because the defendant was sixteen years old at the time of the murder, he was arraigned in the Juvenile Court. The Commonwealth moved for a hearing relative to transfer to Superior Court pursuant to G.L. c. 119, § 72A. The judge allowed the motion and continued the matter until a later date for a hearing on the transfer motion. Ultimately, he ordered the delinquency complaint dismissed and ordered a criminal complaint to issue pursuant to G.L. c. 119, § 61, set forth in the margin. (FN1)

*40 [407 Mass. 858] [1] General Laws c. 119, § 72A, deals with individuals, such as the defendant, who commit offenses prior to their seventeenth birthday but who are not apprehended until after their eighteenth birthday. (FN2) Section 72A provides that a case within its purview is to be heard and determined in accordance with §§ 53-63. With regard to transfer, however, § 72A specifically provides a different standard from that which is applicable in the ordinary juvenile case. Section 72A expressly provides that the Juvenile Court must determine two things in order to transfer the case to the Superior Court. First, the judge must decide whether there is probable cause to believe that the alleged offender committed the offense as charged. Second, the judge must decide whether it would be proper to discharge the alleged offender or whether the interests of the public require that he be bound over for trial as an adult.

In the ordinary juvenile case, transfer is governed by the standards of G.L. c. 119, § 61. Section 61 is one of the sections generally applicable to § 72A cases. Since the Legislature provided specific standards for transfer in § 72A, however, these specific standards preempt the § 61 standards in [407 Mass. 859] this case. In other words, the specific provisions of G.L. c. 119, § 72A, relative to transfer are applicable to a § 72A transfer hearing and the standards set forth in § 61, despite the general

incorporation of §§ 53-63 are not controlling. Cf. *Koller v. Duggan,* 346 Mass. 270, 273, 191 N.E.2d 475 (1963) (particular phrases limit general phrases which might embrace related conduct). If the Legislature had intended the § 61 standards to govern § 72A transfer hearings, it would not have included partially repetitive, partially different standards governing transfer in the text of § 72A itself.

Common sense supports this interpretation of § 72A. The Appeals Court has recognized that some of the § 61 requirements *41 are irrelevant in the context of a § 72A case. See *Commonwealth v. A Juvenile,* 16 Mass.App.Ct. 251, 257, 450 N.E.2d 1089 (1983). We agree. It would be irrational to conclude that the Legislature sought to require the Juvenile Court to determine such things as whether an adult defendant is subject to rehabilitation as a juvenile. To require the Juvenile Court to make such irrelevant findings would be to require a useless and barren act, an intention we choose not to impute to the Legislature. See *Insurance Rating Bd. v. Commissioner of Ins.,* 356 Mass. 184, 189, 248 N.E.2d 500 (1969). The statutory scheme is reasonably clear that in a § 72A case, transfer is to be governed by the specific standards provided in § 72A.

[2] The Juvenile Court judge, after a hearing, determined that there was probable cause to believe that the defendant committed murder. The record amply supports that conclusion and the defendant does not argue otherwise. Thus, the first prerequisite to transfer under § 72A is clearly satisfied.

The second prong of the § 72A test required the judge to decide whether the defendant should "be discharged, if satisfied that such discharge is consistent with the protection of the public," or whether the complaint should "be dismissed, if the court is of the opinion that the interests of the public require that such person be tried for such offense." The judge expressly found that "the interests of the public require that this defendant be tried ... instead of being discharged." The judge relied on the heinous nature of the [407 Mass. 860] crime, the details of which he related in his order. See *Commonwealth v. Costello,* 392 Mass. 393, 397, 467 N.E.2d 811 (1984) (appropriate to rely heavily on seriousness of crime in deciding whether to transfer). The judge had a sufficient basis to conclude that the interests of the public required transfer. The defendant received the benefit of the judge's discretion on this issue, and the judge did not abuse that discretion. (FN3)

2. *The grand jury.* The defendant contends that the integrity of the grand jury was impaired as a result of an incomplete and misleading presentation of the evidence. The defendant also contends that, in the circumstances, the prosecutor should have been required to instruct the jurors on the differences between murder in the first degree and the second degree and manslaughter and the relevance of intoxication to an indictment. We find the defendant's contentions to be without merit.

Because the defendant raises these issues for the first time on appeal, we review the alleged errors in the grand jury proceedings to determine whether they create a substantial risk of a miscarriage of justice. *Commonwealth v. Mayfield,* 398 Mass. 615, 622 n. 4, 500 N.E.2d 774 (1986). We have reviewed the record. The defendant was afforded a fair trial and, therefore, we find no substantial risk of a miscarriage of justice.

3. *Voluntariness of confessions.* The defendant moved to suppress his confessions to the police on the grounds that (1) he did not understand the waiver of his rights and (2) the confessions were involuntary. The judge held a hearing, at which he heard testimony from the defendant, Sergeant [407 Mass. 861] Lapriore, and Detective Furtado. The judge also viewed the videotaped confession. The judge ruled that the defendant's waiver of his Miranda rights was knowing and intelligent beyond a reasonable doubt. He also found, beyond a reasonable doubt, that both confessions to the police were voluntary. The defendant challenges these conclusions on appeal.

*42 Sergeant Lapriore and Detective Furtado both testified that, on the day of the confession, they found the defendant at work and asked to speak with him. The defendant agreed, but first made a telephone call to someone. When they arrived at the district attorney's office, the officers read the defendant his rights in accord with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant stated that he understood these rights. Lapriore then gave the defendant a form explaining the Miranda rights, which the defendant read and signed. The officers testified that at all times, the defendant walked, talked, and acted normally. During the questioning, the defendant confessed. After the defendant was arrested, he was again given the Miranda warnings, this time while recorded on videotape. Once again the defendant stated that he understood the rights.

The defendant testified that he had ingested four or five mescaline pills and smoked seven or eight

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

marihuana cigarettes on the day of the interrogation. He testified that he was not able to think clearly and that he had no recollection of being advised of his rights. The defendant stated that during the questioning "everything is like cloudy."

[3][4] "Intoxication alone is not sufficient to negate an otherwise voluntary act." *Commonwealth v. Doucette,* 391 Mass. 443, 448, 462 N.E.2d 1084 (1984). The defendant spoke coherently with the police, signed a waiver form, and appeared sober to the officers. See *Commonwealth v. Lanoue,* 392 Mass. 583, 589, 467 N.E.2d 159 (1984) (police entitled to rely on defendant's outward behavior). The defendant was able to explain the details of the murder in his confession, which is indicative of the fact that his "mind was not overtaken by drugs." *Id.* In short, the question was one of credibility for the finder of fact and we shall not substitute [407 Mass. 862] our judgment for that of the trial judge. *Commonwealth v. Shipps,* 399 Mass. 820, 826-27, 507 N.E.2d 671 (1987). (FN4)

[5] The defendant's argument that the confessions were not voluntary is equally meritless. There was no evidence of physical coercion, as in *Commonwealth v. Harris,* 371 Mass. 462, 466-467, 358 N.E.2d 982 (1976). Rather, the defendant relies again on his ingestion of mescaline and marihuana. He also claims that his ability to protect himself was broken down when the police told him that they thought he was involved with the murder and then said, "Chris ... she must have really pissed you off to do a thing like that." While both of these factors bear on the voluntariness of the defendant's confession, see *Commonwealth v. Parham,* 390 Mass. 833, 840, 460 N.E.2d 589 (1984) (voluntariness tested by totality of circumstances), they do not compel the conclusion argued for by the defendant. The officers testified that the defendant appeared sober, was responsive to the questions asked, and was cooperative during the entire confession. Sergeant Lapriore testified that the defendant said he felt "a lot better" after confessing. The officers' accounts of the confession, which are corroborated by the videotape, are highly indicative of a voluntary confession. The judge did not err when he concluded that the defendant confessed voluntarily.

[6][7] 4. *Ineffective assistance of counsel.* This court has held that evidence of voluntary intoxication is admissible to show that the defendant is incapable of deliberately premeditating. *Commonwealth v. DelleChiaie,* 323 Mass. 615, 617-618, 84 N.E.2d 7 (1949). Such evidence is also relevant to whether a murder was committed with extreme atrocity or cruelty. See *Commonwealth v. Perry,* 385 Mass. 639, 648-649, 433 N.E.2d 446 (1982). Evidence of voluntary intoxication may also be relevant to determining malice. *Commonwealth v. Grey,* 399 Mass. 469, 470, 505 N.E.2d 171 (1987). There was evidence in this case that the defendant [407 Mass. 863] and the *43 victim smoked hashish shortly before the murder. Because the evidence that the defendant had committed the killing was overwhelming, one of the defendant's primary strategies at trial was to claim that his voluntary ingestion of drugs prevented him from forming the requisite mens rea for murder. Defense counsel brought the evidence of the defendant's intoxication before the jury through cross-examination of several of the Commonwealth's witnesses (the defendant did not testify). The defendant now contends on appeal that his trial counsel's performance was ineffective because there was no expert testimony on the issue of how hashish would affect one's mental processes.

The effectiveness of counsel is judged by determining "whether there has been serious incompetency, inefficiency, or inattention of counsel-- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth v. Saferian,* 366 Mass. 89, 96, 315 N.E.2d 878 (1974). If that is found, then the question is whether the attorney's behavior "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* Trial counsel's perceived error does not fall below this standard.

The defense in this case consisted of two theories. One was voluntary intoxication. The other was self-defense, in that the victim attempted to rob the defendant. If the jury believed the self-defense rationale, the defendant would have been in a far better position than if the jury only believed the intoxication evidence. Neither theory was solid. Defense counsel had to walk a fine line between the two defense theories because, if he overplayed the intoxication theory, "it would have tended to undermine his claim that [the defendant] acted in self-defense." *Commonwealth v. Doucette,* 391 Mass. 443, 458, 462 N.E.2d 1084 (1984), quoting *Reddick v. Commonwealth,* 381 Mass. 398, 407, 409 N.E.2d 764 (1980). Thus, counsel may well have decided not to stress the intoxication issue to the detriment of the self-defense theory, although he did want the evidence of intoxication before the jury. A defense counsel's strategic decisions do not amount to ineffective assistance of counsel unless [407 Mass. 864] they are "manifestly unreasonable." *Commonwealth v. Rondeau,* 378 Mass. 408, 413, 392 N.E.2d 1001

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

556 N.E.2d 37, 407 Mass. 854, Com. v. Bousquet, (Mass. 1990) Page 6

(1979). Counsel's decisions here were not manifestly unreasonable.

In any event, the decision not to call an expert on the issue of mental impairment did not deprive the defendant of "a substantial ground of defence." *Commonwealth v. Saferian, supra.* (FN5) The only evidence of intoxication at the time of the murder was the defendant's own statements--not at trial, but in his confessions to the police--that he and the victim smoked some hashish. Although the defendant told the police that he "flipped out," the confession amply demonstrates that he remembered the killing in detail. Moreover, the defendant had the composure to find and steal the victim's compact after he killed her. Then he ran home and concocted a lie about cutting his thumb on a piece of glass (in his confession he admitted to cutting his thumb when he first attacked the victim). The defendant then went to a hospital to have his thumb treated. In short, the evidence overwhelmingly demonstrated that the defendant was fully capable of thinking, deliberating, planning, and scheming. It "simply did not support a finding that the defendant was so far overcome by intoxicants as to be incapable of first degree murder." *Commonwealth v. Doucette,* 391 Mass. 443, 458, 462 N.E.2d 1084 (1984). Counsel's decision not to introduce expert testimony on this issue did not, therefore, amount to ineffective assistance of counsel. *Id.* See *Commonwealth *44 v. Griffith,* 404 Mass. 256, 262, 534 N.E.2d 1153 (1989) To view preceding link please click here .

5. *The defendant's request to make an unsworn statement.* The defendant asserts that the judge abused his discretion in refusing the defendant's request to make an unsworn statement[407 Mass. 865 ] to the jury. We conclude that the judge's refusal was a valid exercise of his judicial discretion.

At the conclusion of the Commonwealth's closing argument and prior to the jury charge, the defendant's counsel requested that the defendant be allowed to make an unsworn statement to the jury. The Commonwealth objected and the judge took the matter under advisement. The judge then denied the defendant's request "having in mind the peculiar circumstances of this case." The judge stated that he was relying on the exercise of discretion afforded him in *Commonwealth v. Rodriguez,* 364 Mass. 87, 300 N.E.2d 192 (1973).

[8][9] The decision whether to allow a defendant in a capital case to make an unsworn statement to the jury is a matter within the discretion of the trial judge. *Commonwealth v. Rodriguez, supra* 364 Mass. at 96, 300 N.E.2d 192. Although a trial where the defendant chooses not to testify may be more suitable for allowing a statement to be made, *id.,* the defendant has not demonstrated that he was prejudiced by the ruling. There was no abuse of discretion.

6. *The judge's instructions.* The defendant contends that the judge's charge on self-defense was erroneous in that it contained an inadequate and misleading definition of the use of excessive force in self-defense. The defendant also contends that the judge's charge on voluntary intoxication deprived the defendant of due process of law. (FN6) There was no error.

[10] We examine the instructions in their entirety to determine their probable impact on the jury's perception of the fact-finding function. See *Commonwealth v. Albert,* 391 Mass. 853, 857-858, 466 N.E.2d 78 (1984). *Commonwealth v. Simmons,* 383 Mass. 40, 44, 417 N.E.2d 430 (1981). The judge began his instruction on self-defense by informing the jury that, absent excessive force, self-defense is a complete justification or excuse for homicide, and thus warrants a verdict of not guilty. The judge [407 Mass. 866] then explained that the Commonwealth has the burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense. The judge correctly explained the elements of self-defense, informing the jurors that, if they determined that the defendant used unreasonable or excessive force in the circumstances, "then the so-called defense of self defense would not be available to the defendant." After discussing what constitutes excessive force, the judge instructed: "Now, if you find that there was the exercise of the right of self-defense, as I've told you, it is entirely up to you to determine whether the force used in the exercise of that right was excessive or unreasonable and that, therefore, as a result of such excessiveness or unreasonableness, the defense of self-defense, so called, was lost.

"If there was a killing as a result of excessive or unreasonable use of force in the exercise of the right, so called, of self-defense, then the crime under those circumstances would be manslaughter."

Thus, the judge properly instructed the jury that a finding of excessive force results in a verdict of manslaughter.

The judge concluded the self-defense instruction by reiterating that the Commonwealth's failure to

556 N.E.2d 37, 407 Mass. 854, Com. v. Bousquet, (Mass. 1990) Page 7

prove beyond a reasonable doubt that the defendant did not act in self-defense must result in a not guilty verdict, and the Commonwealth's success in proving lack of self-defense beyond a reasonable doubt results in the jury's option of finding the defendant guilty of the other verdict choices, namely murder in the first degree, murder in the second degree, manslaughter, or not guilty.

*45. In his instructions on deliberate premeditation the judge stated that, "[i]f you conclude that there was a self-defense element in this case, but that the necessity of self-defense had passed when the defendant struck the blows which killed [the victim], if that's what you find, then you may find deliberate premeditation, if such is proved by the prosecution." The defendant contends that this instruction misled the jury about the effect of the use of excessive force in self-defense. We disagree. The judge stated several times that the jury's [407 Mass. 867] finding of excessive force would warrant a verdict of manslaughter. During his instructions on self-defense, the judge properly instructed the jury on the elements of self-defense, the burden of proof and the result of the use of excessive force by the defendant. We find no error in the judge's instructions examined in their entirety to determine their probable impact on the jury's perception of the fact-finding function. See *Commonwealth v. Richards*, 384 Mass. 396, 399-400, 425 N.E.2d 305 (1981).

[11] We next address the defendant's contention that the judge's instruction on voluntary intoxication was erroneous. Again, we examine the judge's instructions in their entirety to determine their probable impact on the jury's perception of the fact-finding function, see *Commonwealth v. Albert, supra* 391 Mass. at 857-858, 466 N.E.2d 78. *Commonwealth v. Richards, supra*, and, again, we find the defendant's contention to be without merit. The judge properly charged the jury on voluntary intoxication. (FN7) The judge's use of the word "may" in the first sentence of the charge set forth in the margin, contrary to the defendant's contention, was entirely proper. See *Commonwealth[407 Mass. 868] v. Henson*, 394 Mass. 584, 593-594, 476 N.E.2d 947 (1985) To view preceding link please click here . "Voluntary intoxication is merely 'an evidentiary factor which the jury can consider' on questions of premeditation and malice." *Commonwealth v. Kelcourse*, 404 Mass. 466, 469, 535 N.E.2d 1272 (1989), quoting *Commonwealth v. Sylvester*, 400 Mass. 334, 338, 509 N.E.2d 275 (1987). The judge's charge was entirely accurate. There was no error.

7. *Examination under G.L. c. 278, § 33E*. After reviewing the entire record, we conclude that there is no substantial likelihood that a miscarriage of justice has occurred and, therefore, we decline to grant relief under G.L. c. 278, § 33E (1988 ed.).

*Judgment affirmed.*

(FN1.) General Laws c. 119, § 61 (1988 ed.), provides: "If it is alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child (*a* ) who had previously been committed to the department of youth services as a delinquent child has committed an offense against a law of the commonwealth which, if he were an adult, would be punishable by imprisonment in the state prison; or (*b* ) has committed an offense involving the infliction or threat of serious bodily harm, and in either case if such alleged offense was committed while the child was between his fourteenth and seventeenth birthdays, and if the court enters a written finding based upon clear and convincing evidence that the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any, and is not amenable to rehabilitation as a juvenile, the court may, after a transfer hearing held in accordance with such rules of court as shall be adopted for such purpose, dismiss the complaint.

"At said transfer hearing, which shall be held before any hearing on the merits of the charges alleged, the court shall find whether probable cause exists to believe that the child has committed the offense or violation as charged. If the court so finds, the court shall then consider, but shall not be limited to, evidence of the following factors: (*a* ) the seriousness of the alleged offense; (*b* ) the child's family, school and social history, including his court and juvenile delinquency record, if any; (*c* ) adequate protection of the public, (*d* ) the nature of any past treatment efforts for the child, and (*e* ) the likelihood of rehabilitation of the child.

"If the court determines that the child should be treated as a delinquent child, the court shall forthwith, on motion by or on behalf of the child, continue the proceedings until such further time as the court shall determine; provided, however, that when the child is alleged in a complaint to have violated the provisions of section one of chapter two hundred and sixty-five, the court shall make written findings upon which the determination was

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

556 N.E.2d 37, 407 Mass. 854, Com. v. Bousquet, (Mass. 1990)   Page 8

made to treat such child as a delinquent.

"If the court orders that the delinquency complaint against a child be dismissed it shall cause to be issued a criminal complaint. The case shall thereafter proceed according to the usual course of criminal proceedings and in accordance with the provisions of section thirty of chapter two hundred and eighteen and section eighteen of chapter two hundred and seventy-eight. When such a complaint is issued, section 68 shall apply to any person committed under this section for failure to recognize pending final disposition in the superior court.

"Unless the child by counsel shall waive this provision, the judge who conducts the transfer hearing shall not conduct any subsequent proceeding arising out of the facts alleged in the delinquency complaint."

*45_ (FN2.) General Laws c. 119, § 72A (1988 ed.), provides: "The case of any person who commits an offense or violation prior to his seventeenth birthday, and who is not apprehended until after his eighteenth birthday, shall be heard and determined in accordance with sections fifty-three to sixty-three, inclusive. In any such case, the court, after a hearing shall determine whether there is probable cause to believe that said person committed the offense as charged, and shall, in its discretion, either order that the person be discharged, if satisfied that such discharge is consistent with the protection of the public; or shall order that the complaint be dismissed, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of being discharged. Said hearing shall be held prior to, and separate from, any trial on the merits of the charges alleged."

(FN3.) The defendant appears to argue, in part, that the Juvenile Court did not consider any evidence favorable to the defendant. This is primarily due to the fact that defense counsel introduced no evidence relating to either probable cause or transfer. Defense counsel was clearly on notice of the nature of the hearing. At the arraignment, the judge told counsel he was scheduling a "transfer hearing." Indeed, he did so in response to a written motion by the assistant district attorney. On the day of the hearing, the judge explained to counsel several times the matters that he would be deciding. Moreover, the terms of G.L. c. 119, § 72A, fairly read, give warning that such a hearing will be held. Cf. *A Juvenile, petitioner,* 364 Mass. 531, 543, 306 N.E.2d 822 (1974).

(FN4.) The defendant's related argument that the waiver of the right to counsel was invalid because the police arrested him at night, delaying his arraignment until the next day, was not raised below. Even if it were properly here, we would conclude that the argument is meritless. *Commonwealth v. Daniels,* 366 Mass. 601, 610, 321 N.E.2d 822 (1975).

(FN5.) There is no indication in the record that there was an expert who would testify as to the defendant's intoxication theory. There was a report from a Dr. John E. Snell. Dr. Snell's report, however, focuses on the defense of a lack of criminal responsibility. See *Commonwealth v. McHoul,* 352 Mass. 544, 226 N.E.2d 556 (1967). The Commonwealth had an expert, Dr. Larry H. Strasburger, who was prepared to testify that the defendant was criminally responsible. The defendant does not argue that counsel erred by not presenting evidence as to criminal responsibility.

(FN6.) Since there was no objection to the instructions, the standard of review is whether "there is a 'substantial likelihood that a miscarriage of justice has occurred.'" *Commonwealth v. Lennon,* 399 Mass. 443, 448-449 n. 6, 504 N.E.2d 1051 (1987), quoting *Commonwealth v. Garcia,* 379 Mass. 422, 439, 399 N.E.2d 460 (1980).

(FN7.) A portion of the judge's charge was as follows: "On the question of murder committed with deliberately premeditated malice aforethought, since proof of that crime requires proof of specific intent, you *may* consider evidence of the defendant's drug intoxication at the time of the crime alleged in deciding whether the Commonwealth has proved beyond a reasonable doubt that the defendant was capable of conceiving a deliberately premeditated intention to kill.

"On the question of murder in the first degree, deliberately premeditated, if you are satisfied upon the evidence that the defendant unlawfully killed [the victim], but that the defendant was incapable of conceiving a deliberately premeditated intention to kill because of drug intoxication, then the defendant is not guilty of murder in the first degree based upon deliberate

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

premeditation. That is so because deliberate premeditation is required under the first verdict explanation. And if a person is so overcome by drugs that he is incapable of deliberately premeditating, then the law says, out of kindness to him, that even though he is guilty of an unlawful killing, he is not guilty of murder in the first degree based upon deliberate premeditation.... Of course, if you find in accordance with my instructions that the Commonwealth has proved beyond a reasonable doubt that the defendant had the required specific intent, his intoxication, if any, does not reduce his crime."

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.